1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    WAYNE MORRIS,                              No.  2:13-cv-0805 KJM KJN P

12                  Plaintiff,

13           v.                                  ORDER AND FINDINGS AND
                                                 RECOMMENDATIONS
14    ELIYA MOGHADDAM, M.D., et al.,

15                  Defendants.

16

17    I.  Introduction

18           Plaintiff is a state prisoner proceeding without counsel.  This action proceeds on plaintiff's

19    amended complaint, solely as to defendant Dr. Moghaddam.  Defendant's motion for summary

20    judgment on the issue of exhaustion of administrative remedies is before the court.  As set forth

21    more fully below, the undersigned finds that defendant's motion for summary judgment should be

22    granted.

23    II.  Defendant's Motion for Summary Judgment

24           Defendant moves for summary judgment on the grounds that plaintiff failed to exhaust his

25    administrative remedies prior to filing the instant action.

26           A.  Exhaustion of Administrative Remedies

27           The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be

28    brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a

1    prisoner confined in any jail, prison, or other correctional facility until such administrative

2    remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion

3    requirement applies to all inmate suits about prison life, whether they involve general

4    circumstances or particular episodes, and whether they allege excessive force or some other

5    wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

6         Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731,

7    741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other

8    critical procedural rules[.]"  Woodford v. Ngo, 548 U.S. 81, 90 (2006).  The Supreme Court has

9    also cautioned against reading futility or other exceptions into the statutory exhaustion

10   requirement.  See Booth, 532 U.S. at 741 n.6.  Moreover, because proper exhaustion is necessary,

11   a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise

12   procedurally defective administrative grievance or appeal.  See Woodford, 548 U.S. at 90-93.

13   "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative

14   review process in accordance with the applicable procedural rules,' [] - rules that are defined not

15   by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218

16   (2007) (quoting Woodford, 548 U.S. at 88).  See also Marella v. Terhune, 568 F.3d 1024, 1027

17   (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper

18   exhaustion.'") (quoting Jones, 549 U.S. at 218).

19        In California, prisoners may appeal "any policy, decision, action, condition, or omission

20   by the department or its staff that the inmate or parolee can demonstrate as having a material

21   adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).

22   On January 28, 2011, California prison regulations governing inmate grievances were revised.

23   Cal. Code Regs. tit. 15, § 3084.7.  Now inmates in California proceed through three levels of

24   appeal to exhaust the appeal process:  (1) formal written appeal on a CDC 602 inmate appeal

25   form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the

26   Director of the California Department of Corrections and Rehabilitation ("CDCR").  Cal. Code

27   Regs. tit. 15, § 3084.7.  Under specific circumstances, the first level review may be bypassed.  Id.

28   The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a

1   prisoner's administrative remedies.  See id. § 3084.7(d)(3).  Since 2008, medical appeals have

2   been processed at the third level by the Office of Third Level Appeals for the California

3   Correctional Health Care Services.  A California prisoner is required to submit an inmate appeal

4   at the appropriate level and proceed to the highest level of review available to him.  Butler v.

5   Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir.

6   2002).  Since the 2011 revision, in submitting a grievance, an inmate is required to "list all staff

7   members involved and shall describe their involvement in the issue."  Cal. Code Regs. tit. 15,

8   § 3084.2(3).  Further, the inmate must "state all facts known and available to him/her regarding

9   the issue being appealed at the time," and he or she must "describe the specific issue under appeal

10  and the relief requested."  Cal. Code Regs. tit. 15, §§ 3084.2(a)(4).  An inmate now has thirty

11  calendar days to submit his or her appeal from the occurrence of the event or decision being

12  appealed, or "upon first having knowledge of the action or decision being appealed."  Cal. Code

13  Regs. tit. 15, § 3084.8(b).

14          Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Bock,

15  549 U.S. at 204, 216.  In Albino, the Ninth Circuit agreed with the underlying panel's decision[1]

16  "that the burdens outlined in Hilao [v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996),]

17  should provide the template for the burdens here."  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir.

18  2014) (en banc).  A defendant need only show "that there was an available administrative remedy,

19  and that the prisoner did not exhaust that available remedy."  Albino, 747 F.3d at 1172.  Once the

20  defense meets its burden, the burden shifts to the plaintiff to show that the administrative

21  remedies were unavailable.  See Albino, 697 F.3d at 1030-31.

22          A prisoner may be excused from complying with the PLRA's exhaustion requirement if

23  he establishes that the existing administrative remedies were effectively unavailable to him.  See

24  Albino, 747 F.3d at 1172-73.  When an inmate's administrative grievance is improperly rejected

25  on procedural grounds, exhaustion may be excused as effectively unavailable.  Sapp v. Kimbrell,

26  ─────────────────────

27  [1]  See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012).  The three judge panel noted that "[a]
    defendant's burden of establishing an inmate's failure to exhaust is very low."  Id. at 1031.
    Relevant evidence includes statutes, regulations, and other official directives that explain the

28  scope of the administrative review process.  Id. at 1032.

1   623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir.

2   2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable");

3   Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (exhaustion excused where futile); Brown

4   v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where

5   appeal granted at second level and no further relief was available).

6          Where a prison system's grievance procedures do not specify the requisite level of detail

7   for inmate appeals, Sapp, 623 F.3d at 824, a grievance satisfies the administrative exhaustion

8   requirement if it "alerts the prison to the nature of the wrong for which redress is sought."  Griffin

9   v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  "A grievance need not include legal terminology

10  or legal theories unless they are in some way needed to provide notice of the harm being grieved.

11  A grievance also need not contain every fact necessary to prove each element of an eventual legal

12  claim.  The primary purpose of a grievance is to alert the prison to a problem and facilitate its

13  resolution, not to lay groundwork for litigation."  Griffin, 557 F.3d at 1120.

14         If under the Rule 56 summary judgment standard, the court concludes that plaintiff has

15  failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.

16  Wyatt v. Terhune, 315 F.3d 1108, 1120, overruled on other grounds by Albino, 747 F.3d 1162.

17         B.  Legal Standard for Summary Judgment

18         Summary judgment is appropriate when it is demonstrated that the standard set forth in

19  Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

20  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

21  judgment as a matter of law."  Fed. R. Civ. P. 56(a).

22              Under summary judgment practice, the moving party always
            bears the initial responsibility of informing the district court of the
23          basis for its motion, and identifying those portions of "the
            pleadings, depositions, answers to interrogatories, and admissions
24          on file, together with the affidavits, if any," which it believes
            demonstrate the absence of a genuine issue of material fact.
25

26  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

27  56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need

28  only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

4

1   Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

2   387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

3   committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

4   burden of production may rely on a showing that a party who does have the trial burden cannot

5   produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

6   should be entered, after adequate time for discovery and upon motion, against a party who fails to

7   make a showing sufficient to establish the existence of an element essential to that party's case,

8   and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

9   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

10  necessarily renders all other facts immaterial."  Id. at 323.

11          Consequently, if the moving party meets its initial responsibility, the burden then shifts to

12  the opposing party to establish that a genuine issue as to any material fact actually exists.  See

13  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

14  establish the existence of such a factual dispute, the opposing party may not rely upon the

15  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

16  form of affidavits, and/or admissible discovery material in support of its contention that such a

17  dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

18  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

19  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

20  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

21  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

22  a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

23  (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

24  1564, 1575 (9th Cir. 1990).

25          In the endeavor to establish the existence of a factual dispute, the opposing party need not

26  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

27  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

28  trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

5

1  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

2  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

3  amendments).

4       In resolving a summary judgment motion, the court examines the pleadings, depositions,

5  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

6  Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

7  255.  All reasonable inferences that may be drawn from the facts placed before the court must be

8  drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

9  are not drawn out of the air, and it is the opposing party's obligation to produce a factual

10  predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

11  Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

12  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

13  some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

14  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

15  trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

16       By contemporaneous notice provided on July 30, 2014, (ECF No. 22-2), plaintiff was

17  advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

18  Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

19  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

20      C. Facts[2]

21      1.  Plaintiff is an inmate in the custody of the California Department of Corrections and

22  Rehabilitation ("CDCR").

23      2.  At times relevant to the lawsuit, plaintiff was incarcerated at California State Prison,

24  Sacramento ("CSP-SAC") in Represa, California.  (ECF No. 14 at 5.)

25      3.  Defendant was a physician at CSP-SAC at all relevant times herein.

26
27
28

---

[2]  For purposes of the instant motion for summary judgment, the court finds the following facts undisputed.  Documents submitted as exhibits are considered to the extent they are relevant, and despite the fact that they are not authenticated because such documents could be admissible at trial if authenticated.

6

4.  Plaintiff filed his amended complaint ("FAC") on February 10, 2014.  (ECF No. 14.)

5.  In the FAC, plaintiff alleges that defendant failed to write plaintiff a timely accommodation chrono for a shower chair, cane, and lower-bunk assignment on March 18, 2011, when plaintiff returned to CSP-SAC from the University of California Medical Center (UCD) where plaintiff had Achilles tendon surgery.  (ECF No. 14 at 5.)

6.  In the FAC, plaintiff alleges that defendant should have been aware that plaintiff would fall because UCD's post-operative discharge instructions warned him that shower floors were slippery, and that he should have had someone assist him when taking showers.  (ECF No. 14 at 5.)

7.  In the FAC, plaintiff alleges that defendant had other chances to issue the chrono prior to August 17, 2011, because defendant submitted health care forms on May 5, 2011, and July 9, 2011, documenting plaintiff's falls.  (ECF No. 14 at 5.)

8.  On August 17, 2011, defendant wrote plaintiff an accommodation chrono for a shower chair, cane, and lower-bunk assignment.  (ECF No. 14 at 5.)

9.  Between March 18, 2011, and August 17, 2011, plaintiff exhausted three CDCR Form 602 inmate appeals.  (ECF Nos. 22-4 at 3; 22-8 at 3-4.)

10.  Plaintiff's first appeal, Log No. SAC HC 11013758, submitted on March 15, 2011, alleged his time spent at High Desert State Prison gave him Post Traumatic Stress Disorder ("PTSD") and anxiety.  Plaintiff felt that he had been misunderstood and misdiagnosed for years, but CDCR provided no specialized treatment for PTSD.  Plaintiff did not name defendant in his initial appeal, Log No. SAC HC 11013758.

11.  The second appeal, Log No. SAC HC 11014523, submitted on July 5, 2011, alleged that plaintiff went to the "RN-Line" to seek treatment for pain in his Achilles tendon that he sustained in a fall on June 15, 2011.  Plaintiff was worried that he re-aggravated his Achilles tendon, and also that he had not had any follow-up visits at UCD.  Plaintiff requested that someone call his physician at UCD to schedule a follow-up visit, and to be prescribed pain medication, and an ice pack.  Plaintiff did not name defendant in his initial appeal, Log No. SAC HC 11014523.

7

12.   In the third appeal, Log No. SAC HC 11025234, submitted on October 29, 2011, plaintiff alleges:

> On 10-27-11 I was taken off my morphine that I've been on for over a year.  I had reconstructive surgery on my Achilles tendon and have fallen twice, which has reinjured my leg.  My leg aches day and night, and my leg feels like it's never gonna be without pain.  The Tylenol 3's I am now on do not help my agony and my everyday struggle of trying to walk and my everyday life, just moving in my cell is painful and a struggle.

(ECF No. 22-7 at 6.)  In the action requested portion, plaintiff stated:

> I need to be put on something that will take care of my daily pain and discomfort.  Tylenol 3's are not working and hurt my stomach and do nothing for the pain that I am enduring.  I have great pain in my calf and in my Achilles, I need to have an MRI, physical therapy.

(ECF No. 22-7 at 6.)

13.   In plaintiff's third appeal, Log No. SAC HC 11025234, as set forth in paragraph 13, plaintiff does not mention defendant and does not describe any actions by defendant in the initially submitted 602.  (ECF No. 22-7 at 6.)

14.   Plaintiff's third appeal, Log No. SAC HC 11025234, signed October 29, 2011, was partially granted at the first level because a request for service was approved for physical therapy, but plaintiff's request for an MRI or additional pain medication was denied.  (ECF No. 22-7 at 9.)

15.   In his December 14, 2011 request for second level review, plaintiff stated that his "leg is still in pain and [his] foot and leg is swollen and is hard to walk, due to [his] falls and re[-]injury, failure of being placed in O-Hu; no shower chairs, no handrails and having to bathe while [his] leg was immobilized, due to falls [he has] pain every day and night."  (ECF No. 22-7 at 7.)

16.   Plaintiff's second level review of appeal Log No. SAC HC 11025234 was partially granted on December 28, 2011.  (ECF No. 22-7 at 10.)  The appeal issue was identified as plaintiff alleged that on October 27, 2011, plaintiff was taken off morphine, had fallen twice since reconstructive surgery on his Achilles tendon, and suffered leg aches day and night for which the Tylenol #3 was not helping with the pain and hurt plaintiff's stomach.  (ECF No. 22-7 at 10.)

////

8

Essentially, plaintiff's issue and action requested were identified as he articulated his claims in

initial appeal Log No. SAC HC 11025234.  (Id.)

  The second level reviewer noted that plaintiff's Unit Health Record ("UHR") was

reviewed, and that defendant interviewed plaintiff on December 5, 2011.  (ECF No. 22-7 at 10.)

In addition to addressing plaintiff's pain treatment, the reviewer noted that plaintiff was "also

provided initially and temporarily with a shower chair and a cane to prevent fall and re-injury" as

well as a lower bunk."  (ECF No. 22-7 at 10.)  The appeal reviewer noted that plaintiff was seen

by defendant on a regular basis since the surgery, that the morphine, prescribed for post-operative

pain, was tapered off, and that by November 29, 2011, plaintiff was seen by the orthopedic

surgeon at UCD who noted plaintiff's Achilles repair had healed.  Thus, plaintiff's request for

additional pain medication, an MRI, or housing at the out-patient medical housing unit ("OHU")

were denied, but defendant's request for plaintiff to receive physical therapy was approved on

November 7, 2011.  (ECF No. 22-7 at 10.)

  17.  In his January 18, 2012 request for Director's Level Review, plaintiff wrote:

> My leg is still in great pain, especially when I try to rehab my left
> Achilles tendon area, due to Dr. Moghaddam's failure to place me
> in O-Hu after the initial surgery.  I was just thrown in my cell, no
> shower chair, no rails (hand) to brace myself in the shower.
> Consequently resulting in me falling in the shower and in my cell,
> ultimately causing chronic pain and discomfort on a daily basis.

(ECF No. 22-7 at 7.)

  18.  Plaintiff's third appeal, Log No. SAC HC 11025234, was denied at the Director's

Level on July 10, 2012.  (ECF No. 22-8 at 44.)  The decision reiterated plaintiff's claim

concerning pain from the discontinuation of his morphine prescription and his subsequent two

falls and alleged re-injury.  (ECF No. 22-8 at 44.)  Review of plaintiff's UHR revealed the

following:

> • You were seen multiple times from December 29, 2011
> through May 11, 2012, by the PCP regarding your left ankle
> pain.  Your most recent PCP encounter noted you ambulate
> with a cane, you opted to continue your current work
> assignment, and the dose of the medication tramadol was
> increased as part of your plan of care.

- You received physical therapy evaluation on January 25, 2012.

- Your current medication profile indicates active prescriptions for the pain medications ibuprofen and tramadol.

(ECF No. 22-8 at 45.)  The reviewer noted that plaintiff was receiving ongoing evaluation and treatment concerning appeal issues as determined to be medically indicated by plaintiff's providers, and that no documentation indicated the PCP determined plaintiff's condition warranted an MRI.  (ECF No. 22-8 at 45.)  Plaintiff's third level appeal was denied.

        D.  The Parties' Contentions

        Defendant contends that he is entitled to summary judgment because plaintiff failed to comply with regulations governing prisoner appeals because he never mentioned Dr. Moghaddam's failure to provide plaintiff with a shower chair, cane, and lower bunk assignment in any of his exhausted appeals.  Defendant argues that plaintiff's exhausted appeals do not identify Dr. Moghaddam and do not describe his alleged involvement; rather, plaintiff mentions Dr. Moghaddam in his requests for second and third level reviews, in violation of prison appeal regulations.  Finally, after August 17, when plaintiff was issued an accommodation chrono for a shower chair, cane and lower bunk assignment, plaintiff did not timely file an appeal regarding this incident.  Thus, defendant contends plaintiff failed to follow CDCR regulations and failed to put prison officials on notice of the complaints against Dr. Moghaddam contained in the instant FAC.

        Plaintiff opposes the motion, arguing that on January 18, 2012, he mentioned defendant in depth in plaintiff's appeal Log No. SAC HC 11025234 requesting Director's Level Review, and received a third level appeal response, thus exhausting this claim.  Plaintiff claims he filed two timely, fully-exhausted appeals that satisfy the exhaustion requirement: Log No. SAC HC 11025234 and Log No. SAC HC 11014523.  Plaintiff argues that he is not required to name individuals in his administrative appeals, citing Jones, 549 U.S. at 216.  (ECF No. 30 at 3-4.) Plaintiff states that he "specifically mentioned and identified defendant and his involvement in his initial submitted appeal Log No. SAC-HC-11014523," citing his Exhibit A.  (ECF No. 30 at 5.)

10

1    Plaintiff also argues that he is not required to allege every fact necessary to state or prove a legal

2    claim in his administrative appeal.  (ECF No. 30 at 6.)

3           Plaintiff also contends he submitted multiple sick call slips that put defendant and CSP-

4    SAC medical staff on notice that plaintiff was at risk of falling and sustaining re-injury due to

5    such falls.  (ECF No. 30 at 6.)  Plaintiff provided copies of health care services request forms:

6    March 25, 2012 (plaintiff has been trying to do physical therapy strength exercises, but is in "real

7    pain and discomfort.  Something is really wrong with [his] left Achilles tendon."); December 3,

8    2011 ("leg is hurting all day and night, especially when [plaintiff] wears work boots."); July 9,

9    2011 (please refill morphine prescription; plaintiff has "great pain" in his calf and Achilles.); July

10   14, 2011 (please refill morphine prescription; plaintiff recently fell and reinjured his Achilles

11   tendon and has great pain); July 26, 2011 (plaintiff fell in the shower on July 26, 2011, claimed

12   the nurse on A-yard failed to do her duties and document the incident and give treatment; plaintiff

13   had pain in calf and Achilles); March 23, 2012 (plaintiff trying to perform physical therapy

14   strength exercises, but is in real pain and discomfort); and January 29, 2012 (plaintiff has been

15   going through physical therapy, but something is wrong as his calf and leg "really hurt.").

16   (ECF No. 30 at 13-20.)

17          Also, plaintiff claims that he timely filed and fully exhausted appeal Log No. SAC-HC-

18   11014523, but that the first level appeal response exceeded the thirty day time limit required for

19   such response.  (ECF No. 30 at 6.)

20          Finally, plaintiff argues that defendant failed to timely provide plaintiff accommodation

21   chronos for a shower chair, cane, and lower bunk assignment on March 18, 2011, when defendant

22   received a fax concerning plaintiff's post-surgical care from UC Davis, and wrote physician's

23   orders for plaintiff's post-operative care in prison.  (ECF No. 30 at 7, 25-28.)  Plaintiff contends

24   that he was to be housed in the OHU due to his needing assistance with his daily living activities,

25   i.e. dressing, grooming, and bathing.  (ECF No. 30 at 7.)  Plaintiff argues that defendant interfered

26   with his post-surgical care by cancelling plaintiff's OHU housing and returning plaintiff back to

27   his cell, and by failing to timely issue accommodation chronos for a shower chair, cane and lower

28   ////

1    bunk, because plaintiff's medical needs and risk of falling were obvious, even to a layperson.

2    (ECF No. 30 at 8.)

3         In reply, defendant contends that appeal Log No. SAC HC 11025234 failed to exhaust

4    plaintiff's claim against defendant because plaintiff did not mention defendant or his allegedly

5    wrongful actions until the third level of review violating regulations which require a prisoner to

6    include his claims in the original 602 appeal form.  (ECF No. 37 at 4, citing Cal. Code Regs. tit.

7    15, §§ 3084.2(a)(3); 3084.1(b).)  Defendant argues that allowing an inmate to interject new

8    claims and individuals during the review process subverts the appeal process because the issue

9    would not be reviewed at all levels.  Defendant contends that none of plaintiff's exhausted

10   appeals put prison officials on notice of plaintiff's claim that defendant was deliberately

11   indifferent to plaintiff's serious medical needs by failing to prescribe such accommodations.

12   Defendant contends that plaintiff's argument that multiple sick-call slips placed defendant and

13   CSP-SAC on notice of plaintiff's risk of falling is unavailing because sick call slips cannot be

14   used to exhaust administrative remedies.

15        Finally, defendant argues that plaintiff's contention that appeal Log No. SAC HC

16   11014523 was timely submitted and should have exhausted his claim against defendant is

17   unavailing because such appeal, submitted on July 5, only related to plaintiff's effort to obtain a

18   follow-up visit to UC Davis Medical Group for pain in his Achilles tendon.  (ECF No. 37 at 5.)

19   Moreover, appeal Log No. SAC HC 11014523 did not mention Dr. Moghaddam at all.  Because

20   such appeal did not pursue plaintiff's instant claims against defendant, defendant contends the

21   delay in providing a first level appeal response is not relevant, but in any event, defendant argues

22   that such delay did not prevent plaintiff from fully exhausting this unrelated appeal.

23        E.  Discussion

24        Proper exhaustion of available remedies is mandatory, Booth, 532 U.S. at 741, and

25   "[p]roper exhaustion demands compliance with an agency's deadlines and other critical

26   procedural rules[.]"  Woodford, 548 U.S. at 90.  As set forth above, the regulations governing

27   inmate grievances in California were revised on January 28, 2011, and now require inmates to

28   name the staff person involved, and to provide all facts regarding the issue being appealed, as

                                                    12

1   well as the relief requested.  Cal. Code Regs. tit. 15, §§ 3084.2(3), 3084.2(a)(4).  The Supreme

2   Court has stated that to properly exhaust administrative remedies, inmates must comply with the

3   applicable procedural rules because administrative exhaustion is governed by the prison grievance

4   process itself, not by the PLRA.  Jones, 549 U.S. at 218; Woodford, 548 U.S. at 88.

5          It is undisputed that plaintiff's first appeal, Log No. SAC HC 11013758, pertaining to

6   plaintiff's PTSD, is wholly unrelated to the issues herein.

7          In connection with plaintiff's appeals, Log Nos. SAC HC 11014523 and SAC HC

8   11025234, defendant adduced evidence that plaintiff failed to raise his accommodation chrono

9   claim in either initial appeal, and that plaintiff failed to identify defendant or specific actions or

10  inactions that could be attributed to defendant in each initial appeal.  It is undisputed that these

11  two appeals do not name defendant in the initial 602 appeal form, as now required under

12  California prison regulations.  Thus, defendant has met his burden of demonstrating that plaintiff

13  failed to exhaust the accommodation chrono claim raised in the FAC.

14         In his opposition, plaintiff states that he "specifically mentioned and identified defendant

15  and his involvement in his initial submitted appeal Log No. SAC-HC-11014523," citing Exhibit

16  A.  (ECF No. 30 at 5.)  However, plaintiff's Exhibit A is a copy of the third level review decision

17  issued in Log Nos. SAC HC 11025234 and SAC HC 11014523.

18         Moreover, in the statement of undisputed facts, plaintiff admits to the facts contained in

19  the first and second level appeals in Log No. SAC HC 11014523.  (ECF No. 31 at 2.)  None of

20  the undisputed facts include allegations concerning defendant's alleged failure to timely issue

21  plaintiff the accommodation chronos referenced in the FAC.  Rather, plaintiff claimed he was

22  suffering pain from the alleged re-injury to his Achilles tendon from a fall, and he sought a

23  follow-up visit with his UC Davis physician, pain medication, and an ice pack.  Plaintiff does not

24  identify where, how or why he fell.  Plaintiff does not seek accommodation chronos.  Rather, the

25  focus of plaintiff's claim was his pain, and he sought treatment for such pain.  Such allegations,

26  without more, failed to put prison officials on notice of plaintiff's instant claim that defendant

27  was deliberately indifferent to plaintiff's serious medical needs by failing to timely issue

28  accommodation chronos to plaintiff.

1    In appeal Log No. SAC HC 11025234, plaintiff was again concerned about pain.  In the

2  initial appeal, he noted he had fallen twice, but did not describe the circumstances of such falls.

3  Plaintiff sought a different pain medication, an MRI, and physical therapy.  In his request for

4  second level review, plaintiff stated he still had pain "due to [his] falls and re-injury, failure of

5  being placed in OHU, no shower chairs, no handrails and having to bathe while [his] leg was

6  immobilized," but again seeks pain relief.  (ECF No. 22-7 at 7.)  In the second level appeal

7  response, the reviewer noted that plaintiff attributed his pain to falls caused by the failure of not

8  being placed in OHU, no shower chairs, no handrails and having to bathe while plaintiff's leg was

9  immobilized.  (ECF No. 22-8 at 51.)  But other than identifying such alleged cause of the falls,

10  plaintiff included no allegations as to defendant and alleged no facts attributable to an individual

11  based on the claims raised herein.  It was not until January 18, 2012, when plaintiff sought a

12  Director's Level Review, that plaintiff named defendant and alleged that plaintiff's leg pain was

13  caused by defendant's failure to place plaintiff in the OHU after the initial surgery.  (ECF No. 22-

14  7 at 7.)  In this request for third level review, plaintiff also claimed that he was not provided a

15  shower chair and had no hand rails to brace himself during his showers.  (Id.)

16    "Administrative remedies shall not be considered exhausted relative to any new issue,

17  information, or person later named by the appellant that was not included in the originally

18  submitted [appeal] and addressed through all required levels of administrative review up to and

19  including the third level."  Cal. Code Regs. tit. 15, § 3084.1(b).  In other words, although plaintiff

20  contends that appeal Log No. SAC HC 11025234 exhausts the instant claim because he raised it

21  in his request for Director's Level Review, new claims are not permitted as the appeal moves

22  through the levels of review.  A prisoner does not exhaust administrative remedies when he

23  includes new issues from one level of review to another.  See Sapp, 623 F.3d at 825 (concluding

24  that it was proper for prison officials to "decline[] to consider a complaint about [prisoner's] eye

25  condition that he raised for the first time in a second-level appeal about medical care for a skin

26  condition."); Dawkins v. Butler, 2013 WL 2475870, *8 (S.D. Cal. 2013) (a claim made for the

27  first time in plaintiff's request for Third Level review was insufficient to exhaust the issue where

28  it was not included in the original appeal).

14

1    Moreover, although plaintiff is correct that the prisoner in Jones, 549 U.S. at 216, was not

2    required to name the defendant in his administrative appeal, the Jones case was decided in 2007,

3    so the administrative appeal filed by the prisoner in Jones was submitted long before the revisions

4    to the California prison regulations became effective on January 28, 2011.  Because plaintiff's

5    administrative appeals were filed in 2011 after such revisions became effective, and the Supreme

6    Court has found that compliance with prison regulations, and not the PLRA, determine the issue

7    of exhaustion, Jones, 549 U.S. at 218, plaintiff was required to name defendant in his initial

8    appeal as well as to describe the actions or inactions of defendant that plaintiff was appealing.

9    Here, as set forth above, plaintiff did neither as to the instant claims against defendant for

10   allegedly failing to timely provide accommodation chronos.

11   Finally, plaintiff does not argue, and alleges no facts suggesting, that administrative

12   remedies were rendered unavailable through no fault of his own.[3]

13   III.  Defendant's Motion to Dismiss

14   On July 30, 2014, defendant also filed a motion to dismiss alleging that plaintiff's FAC

15   fails to state a cognizable claim against defendant.  In light of the above, defendant's motion to

16   dismiss is denied without prejudice.

17   IV.  Conclusion

18   Accordingly, IT IS HEREBY ORDERED that defendant's motion to dismiss (ECF No.

19   23) is denied without prejudice; and

20   IT IS RECOMMENDED that defendant's motion for summary judgment (ECF No. 22) be

21   granted; and this action be dismissed in its entirety, without prejudice, based on plaintiff's failure

22   to exhaust administrative remedies.

23   These findings and recommendations are submitted to the United States District Judge

24   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

25   after being served with these findings and recommendations, any party may file written

26   objections with the court and serve a copy on all parties.  Such a document should be captioned

27

28

---

[3]  Plaintiff's arguments concerning the underlying merits of his claim are not relevant to the issue of whether plaintiff first exhausted his administrative remedies, and thus are not discussed herein.

15

1    "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

2    objections shall be served and filed within fourteen days after service of the objections.  The

3    parties are advised that failure to file objections within the specified time may waive the right to

4    appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

5    Dated:  January 8, 2015

6

7                                                        KENDALL J. NEWMAN
                                                         UNITED STATES MAGISTRATE JUDGE

8    /morr0805.msj.fte

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28